IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 1, 2019

IN RE MATASIA R., ET AL.[1]

**Appeal from the Juvenile Court for Hamblen County**
**No. 14870J    Janice Hope Snider, Judge**

---

**No. E2018-01834-COA-R3-PT**

---

This action involves the termination of a father's parental rights to his minor children. Following a bench trial, the trial court found that clear and convincing evidence existed to support the statutory ground of abandonment by an incarcerated parent. The court further found that termination was in the best interest of the children. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Russell S. Veldman, Chuckey, Tennessee, for the appellant, Robert R.

Herbert H. Slatery, III, Attorney General & Reporter, and Erin A. Shackelford, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

**I.    BACKGROUND**

Matasia R. and KyJuan T. (collectively "the Children") were born to Cissy S. ("Mother") in November 2006 and October 2010. Robert R. ("Father") has been adjudicated as the legal father of the Children, and he has evidenced this fact by his care and attention to them. In 2007 and again in 2010, Father was awarded legal custody of Matasia as a result of Mother's history of drug abuse and child neglect. KyJuan was

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

placed into the custody of the Tennessee Department of Children's Services ("DCS") following his birth as a result of Mother's drug use while pregnant. He was returned to her on January 11, 2012, after Mother's completion of a permanency plan and a trial home placement.

Matasia remained with Father, while Mother's visitation rights were restricted to supervised visitation by court order. Father maintained a nice home and lifestyle for Matasia until he engaged in conduct that led to his arrest in February 2014 for theft. He later pled guilty and was incarcerated on November 2015 for theft and the violation of a prior community corrections sentence.[2] Prior to his incarceration, he entrusted the care of Matasia to his friend, Terra R. Father later authorized Mother to engage in unsupervised visitation. However, Mother then refused to return Matasia to Terra R. at the appointed time. Matasia remained with Mother until February 2016, when the Children were removed due to allegations concerning Mother's drug abuse and Father's inability to care for them while incarcerated.

The Children were adjudicated as dependent and neglected and placed in a foster home, where they have remained since that time. A permanency plan was created on March 1, 2016, and revised on September 1, 2016. Both plans were ratified by the trial court. Father was tasked with a number of requirements that were impossible to complete while incarcerated. Further, DCS was unable to assist him in completing said requirements because of the distance between the prison and DCS's caseworker assigned to represent the Children.

DCS filed a petition to terminate Father's parental rights on May 2, 2017, based upon the statutory grounds of abandonment; substantial noncompliance with the permanency plan; the persistence of conditions which led to removal; and Father's sentence of ten or more years.[3] The case proceeded to a hearing on November 20, 2017, at which DCS withdrew its request for termination based upon Father's sentence.

Father testified that he was charged with theft after he worked on his aunt's car. He explained that he put a new motor in her van at her request but that he put the old motor back in when she refused to pay him for his work. She retrieved the van and reported him for theft. He was charged with theft because the police could not find the van. He stated that he was scheduled for a parole hearing on March 23, 2018. He believed that he will have completed his sentence by that time and will be released.

---

[2] Father had been convicted of the sale and delivery of cocaine in 2004, for which he received a sentence of community corrections prior to either child's birth.

[3] Mother's parental rights were also terminated. She is not a party to this appeal.

Father stated that prior to his incarceration, he was granted 15 days to make arrangements for Matasia. He found a notary and relinquished custody to Terra R. during that time. He helped Matasia transition to her new home and then reported to jail as directed. He later allowed Matasia to visit Mother; however, he called the police and DCS when Mother refused to return Matasia. He claimed that the police refused to remove Matasia because she was with her biological mother. DCS also refused to take action, despite his frequent requests for assistance in removing Matasia from Mother. He then asked Mother's neighbor to report Mother for neglect and drug abuse. He claimed that the Children were finally removed by DCS as a result of the neighbor's allegations.

Father identified a plethora of correspondence between himself and the Children. He stated that he spoke with them on a weekly basis, when possible. He also made them leather belts and purses to give to them as gifts. He expressed love for them and claimed that he cared for KyJuan in Mother's absence even though she technically had legal custody of him. He explained that Mother would disappear for months prior to his incarceration. He provided that he also reported Mother for her drug use while pregnant but that DCS failed to take action. He alleged that KyJuan was born with spina bifida as a result of Mother's drug use while pregnant.

April Turner, the family case worker, testified that the Children last came into custody in February 2016 based upon allegations of Mother's drug abuse and Father's inability to care for them as a result of his incarceration. She advised Father of the Criteria and Procedures for Termination of his parental rights by telephone due to his incarceration. She explained that he has been incarcerated for the entire time the Children have been custody. She conceded that he was eligible for parole in March 2018 but claimed that his official release date was not until 2022.

Ms. Turner testified that Father attempted to complete some permanency plan requirements and was able to maintain regular contact with the Children by telephone, despite his incarceration. She explained that the classes and workshops he attended while incarcerated would not fulfill the plan requirements because the classes were not certified through DCS. She acknowledged that she also could not facilitate other necessary services in compliance with the permanency plans due to Father's incarceration. She agreed that she was not even authorized to meet with Father at the prison due to travel restrictions placed upon her by DCS.

Ms. Turner stated that she arranged a visit for the Children with Terra R., a family friend. She did not observe a bond between Terra and the Children. She claimed that Matasia advised her that she was not comfortable with Terra and did not know her well. She stated that the Children were placed in the same foster home and each had prior

involvement with the same foster family during prior periods of removal. She believed the Children had adjusted well and expressed excitement about their future in the home.

Foster Mother testified that the Children have been in her home since February 2016 and are doing well. She believed they were bonded to the other children in the home. She expressed love and concern for them and indicated a desire to adopt them. She evidenced knowledge of KyJuan's medical condition and a willingness to assist him in his long-term care. She provided that he was eligible for surgery to better his condition but that his doctor would not perform the procedure until his family life was stable. She confirmed that Father had provided some gifts for the Children and maintained regular telephone contact.

Terra R. testified that she indicated her willingness to take foster classes and qualify as a placement for the Children. She also visited with the Children when permitted by DCS. She was later advised that there was no need to become a certified foster parent because Matasia did not want to reside with her.

On January 11, 2018, the trial court found that termination was not in the best interest of the Children at that time based upon Father's upcoming parole hearing and possible release. Father's parole hearing did not occur as scheduled due to his failure to complete the proper paperwork. Thereafter, DCS moved for an order terminating Father's parental rights as a result of his failure to obtain parole. The trial court reopened the proof to consider the fact that parole had been denied. The court then granted the termination petition, sustaining only one of the three grounds alleged, namely abandonment based upon Father's conduct prior to incarceration. The court further found that termination was in the best interest of the Children. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.      Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment related to Father's conduct prior to incarceration pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv).[4]

---

[4] Father claims that the court erred in terminating his rights based upon his sentence of ten years or more pursuant to Tennessee Code Annotated section 36-1-113(g)(6). The record reflects that DCS withdrew this ground prior to the hearing and that the court did not consider this ground as a basis for termination.

B.     Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Children pursuant to Tennessee Code Annotated section 36-1-113(i).

## III.     STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

(1)     [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)     [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620,

622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV. DISCUSSION

### A.

Parental rights may be terminated if the parent has been incarcerated during all or part of the four months immediately preceding the filing of the termination petition and has engaged in conduct prior to incarceration that exhibits a wanton disregard for the child's welfare. Tenn. Code Ann. § 36-1-102(1)(A)(iv). To prove this ground, DCS must establish that (1) Father was incarcerated at the time the termination petition was filed or within the preceding four-month period and that (2) he engaged in conduct prior

to incarceration that exhibits a wanton disregard for the welfare of the child. Tenn. Code Ann. § 36-1-102(1)(A)(iv); *In re Kason C.*, No. M2013-02624-COA-R3-PT, 2014 WL 2768003, *5 (Tenn. Ct. App. June 17, 2014).

Here, Father was incarcerated for the entirety of the four months preceding the filing of the termination petition. The applicable four-month window was from July 12, 2015, through November 11, 2015.[5] This court has held that such conduct may occur at any time prior to incarceration and is not limited to acts occurring during the four-month period immediately preceding the incarceration. *State of Tenn., Dep't. of Children's Servs. v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009). We have held on numerous occasions that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867-68.

Here, Father was charged and ultimately pled guilty to theft for his involvement in a dispute with his aunt concerning his repair of her van. While this conduct alone may not rise to the level of wanton disregard, Father was serving a sentence of community corrections when he engaged in such criminal behavior. He was also aware that violating the terms of his conditional release would result in an extended period of confinement, leaving the Children without adequate supervision given Mother's inability to care for them as a result of her drug use. Further, he entrusted Matasia to the care of Terra R. prior to his incarceration and then later authorized Mother to have unsupervised visitation with Matasia while he was incarcerated. Terra R. was then unable to retrieve Matasia when Mother refused to return her at the appointed time, thereby resulting in the Children's removal by DCS and placement in foster care. In terminating his parental rights, the trial court relied upon Father's conduct prior to incarceration that led to the violation of his community corrections sentence, along with his authorization of Mother to engage in unsupervised visitation, despite his concerns with her ability to care for the Children and a prior court order limiting her to supervised visitation with Matasia. We agree with the trial court that the totality of the circumstances presented in this case support a finding of wanton disregard for the welfare of the Children. Accordingly, we affirm the court's finding of abandonment.

---

[5] Father's period of incarceration prior to the filing of termination petition began on November 12, 2015. "The applicable four-month window . . . includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed." *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014). We reason the same holds true for the start date of the parent's incarceration.

B.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the Children. In making this determination, we are guided by the following non-exhaustive list of factors:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[6]

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may

---

[6] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

We acknowledge Father's efforts to maintain a relationship with the Children while incarcerated and his completion of classes and programs to aid him in his eventual release. However, the fact remains that Father is still incarcerated, leaving him unable to care for the Children. Tenn. Code Ann. § 36-1-113(i)(1), (7), (9). Meanwhile, the Children have bonded to a foster family and are thriving. A change of caretakers at this point in the Children's life would be detrimental to their emotional condition and KyJuan's medical condition. Tenn. Code Ann. § 36-1-113(i)(5). The Children should be allowed to achieve permanency and stability in their current home. KyJuan should also be allowed to progress in the treatment of his condition with the support of a stable family. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Children. We affirm the trial court.

## V.     CONCLUSION

The judgment of the trial court is affirmed.  The case is remanded for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, Robert R.

_____
JOHN W. McCLARTY, JUDGE